Ryan L. Gentile, Esq.
Law Offices of Gus Michael Farinella, PC
110 Jericho Turnpike - Suite 100
Floral Park, NY 11001
Tel: 201-873-7675
Attorney for Plaintiffs, Jonbu Tunji Adebo, and Emmanuella Philippe, on behalf of themselves and all others similarly situated

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
---------------------------------------------------------X
JONBU TUNJI ADEBO and                                        Civil Action No.
EMMANUELLA PHILIPPE, on behalf of
themselves and all others similarly situated


                    Plaintiffs,
                                                             **CLASS ACTION**
                                                             **COMPLAINT**
     v.

FINANCIAL ASSET MANAGEMENT
SYSTEMS, INC.

                    Defendant.
---------------------------------------------------------X

Plaintiffs, by and through their counsel, Ryan Gentile, Esq., as and for their complaint against Defendant, on behalf of themselves and pursuant to Rule 23 of the Federal Rules of Civil Procedure all others similarly situated, allege as follows:

**INTRODUCTION**

1.  Jonbu Tunji Adebo and Emmanuella Philippe ("Plaintiffs"), on their own behalves and on behalf of the class they seek to represent, bring this action to secure redress for the debt collection practices utilized by Financial Asset Management Systems, Inc. ("FAMS" or "Defendant") in

1

connection with their attempts to collect alleged debts from themselves and others similarly situated.

2. Plaintiffs allege that Defendant's collection practices violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*. ("FDCPA").

3. The FDCPA broadly prohibits conduct which harasses, oppresses or abuses any debtor; any false, deceptive or misleading statements made in connection with the collection of a debt; unfair or unconscionable collection methods; and requires certain disclosures. *See* 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

4. The FDCPA is generally characterized as a "strict liability" statute because "it imposes liability without proof of an intentional violation." Glover v. FDIC, 698 F.3d 139 (3d. Cir. 2012) (citing Allen ex rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364, 368 & n. 7 (3d Cir. 2011).

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over Plaintiffs' FDCPA claims pursuant to 15 U.S.C. §1692k(d) and 28 U.S.C. §1331.

6. Venue and personal jurisdiction in this District are proper because:
    i.   The acts giving rise to this lawsuit occurred within this District; and
    ii.  Defendant does business within this District.

**PARTIES**

7. Jonbu Tunji Adebo is an individual natural person who at all relevant times resided in the City of Newark, County of Essex, State of New Jersey.

8. Jonbu Tunji Adebo is a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

9. Emmanuella Philippe is an individual natural person who at all relevant times resided in the City of West Orange, County of Essex, State of New Jersey.

10. Emmanuella Philippe is a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

11. FAMS is a Corporation with its principal place of business located at 645 Molly Ln #110, Woodstock, GA 30189.

12. The principal purpose of FAMS is the collection of debts using the mail and telephone.

13. FAMS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

14. FAMS is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

## FACTS AS TO JONBU TUNJI ADEBO

15. On February 29, 2012, Jonbu Tunji Adebo allegedly incurred a financial obligation to the State of New Jersey (the "Adebo Debt").

16. The Adebo Debt arose out of a transaction in which the money, property, insurance or services which were the subject of the transaction were primarily for personal, family or household purposes, namely fees emanating from medical services rendered to Jonbu Tunji Adebo at certain state hospitals.

17. Jonbu Tunji Adebo's medical debt to the State of New Jersey is a "debt" as defined by 15 U.S.C. §1692a(5).

18. Sometime after the incurrence of the Adebo Debt, but before the initiation of this action, Jonbu Tunji Adebo was alleged to have fallen behind on payments owed on the Adebo Debt.

19. On or before August 8, 2016, the Adebo Debt was referred by Jonbu Tunji Adebo's creditor to FAMS for the purpose of collections.

20. FAMS contends that the Adebo Debt is past-due and in default.

21. At the time the Adebo Debt was referred to FAMS, the Adebo Debt was past-due.

22. At the time the Adebo Debt was referred to FAMS, the Adebo Debt was in default.

23. At all times relevant hereto, Defendant acted in an attempt to collect the Adebo Debt.

24. On or about August 8, 2016, FAMS mailed or caused to be mailed a letter to Jonbu Tunji Adebo. (Annexed and attached hereto as Exhibit A is a true copy of the letter dated August 8, 2016 sent by FAMS to Jonbu Tunji Adebo, except the undersigned counsel has in accordance with Fed. R. Civ. P. 5.2 redacted the financial account numbers and Jonbu Tunji Adebo's street address to protect his privacy).

25. FAMS mailed the August 8, 2016 letter attached as Exhibit A as a part of their efforts to collect the Adebo Debt.

26. Jonbu Tunji Adebo received the letter attached as Exhibit A in the mail.

27. Jonbu Tunji Adebo read the letter attached as Exhibit A upon receipt of the letter in the mail.

28. Exhibit A was sent in connection with the collection of the Adebo Debt.

29. Exhibit A seeks to collect the Adebo Debt.

30. Exhibit A conveyed information regarding the Adebo Debt including the Balance Owed, FAMS reference number, and a demand for payment.

31. The letter attached as Exhibit A is a "communication" as that term is defined by 15 U.S.C. §1692a(2).

32. The letter attached as Exhibit A is the first written communication Jonbu Tunji Adebo received from Defendant.

33. The letter attached as <u>Exhibit A</u> is the first written communication Defendant sent to Jonbu Tunji Adebo regarding the Adebo Debt.

34. <u>Exhibit A</u> represents FAMS's initial collection "communication" with Jonbu Tunji Adebo as "communication" is defined by 15 U.S.C. §1692a(2).

35. Besides the letter attached as <u>Exhibit A,</u> Jonbu Tunji Adebo did not receive any other document from FAMS purporting to contain the initial disclosures required by 15 U.S.C. §1692g.

36. The letter attached as <u>Exhibit A</u> states in relevant part:

    BALANCE OWED $11,463.00

37. The letter attached as <u>Exhibit A</u> states in relevant part:

    If you do not dispute the balance, please send your check or money order to FAMS with the payment coupon below.

38. The letter attached as <u>Exhibit A</u> contained a detachable payment coupon for Jonbu Tunji Adebo to return with payment towards the Adebo Debt that listed a "Balance Owed" of $11,463.00.

39. The letter attached as <u>Exhibit A</u> also states in relevant part on the top of the letter and in the detachable payment coupon:

    "Pay Online by Visiting www.famspayonline.net"

40. <u>Exhibit A</u> listed a "Balance Owed" of $11,463.00 on the top portion of the letter and in the payment coupon, but did not disclose that the Balance Owed might increase due to interest and/or fees.

41. On April 18, 2017, Jonbu Tunji Adebo visited the website www.famspayonline.net that was referred to in <u>Exhibit A</u> to make a payment.

42. When Jonbu Tunji Adebo imputed his FAMS ID number and zip code in the online payment portion of the website, his account appeared and stated the "Current Balance" of the Adebo Debt to be $12,160.00. (Annexed hereto and attached as <u>Exhibit B</u> is the April 18, 2017 printout showing the "Balance Owed" on the Adebo Debt to be $12,160.00).

43. Upon information and belief, the $697.00 increase in the amount of the Adebo Debt from the August 8, 2016 letter attached as <u>Exhibit A</u> ($11,463.00) to the April 18, 2017 notice attached as <u>Exhibit B</u> ($12,160.00) was because of interest and/or fees that had accumulated and/or been added onto the Adebo Debt.

44. Jonbu Tunji Adebo, as would any least sophisticated consumer, incorrectly believed from reading <u>Exhibit A</u> that the "Balance Owed" was static and that his payment of the $11,463.00 amount listed <u>Exhibit A</u> and the detachable payment coupon contain therein would satisfy the Adebo Debt irrespective of when the payment was remitted.

45. On April 18, 2017, had Jonbu Tunji Adebo followed the instructions on <u>Exhibit A</u> and sent a payment of $11,463.00 in the form of a "check or money order to FAMS with the payment coupon below", that would not have satisfied the Adebo Debt in full because the Adebo Debt was accruing interest and/or fees that were not disclosed to Jonbu Tunji Adebo in <u>Exhibit A</u>.

46. On April 18, 2017, had Jonbu Tunji Adebo followed the instructions on <u>Exhibit A</u> and sent a payment of $11,463.00 in the form of a "check or money order to FAMS with the payment coupon below", he still would have owed an additional $697.00 that had accumulated on the Adebo Debt between August 8, 2016 and April 18, 2017. (*See* <u>Exhibit B</u>)

47. <u>Exhibit A</u> is a standardized form letter.

6

48. FAMS's debt collection practice is largely automated and utilizes standardized form letters.

49. On information and belief, the August 8, 2016 letter attached as <u>Exhibit A</u> is a mass-produced, computer generated form letter that is prepared by FAMS and mailed to consumers in the State of New Jersey, such as Jonbu Tunji Adebo, from whom they are attempting to collect a debt.

50. Defendant used the same procedures it used in sending the letter attached as <u>Exhibit A</u> when sending the same and/or similar letters to other New Jersey consumers.

**FACTS AS TO EMMANUELLA PHILIPPE**

51. On October 22, 2011, Emmanuella Philippe allegedly incurred a financial obligation to the State of New Jersey (the "Philippe Debt").

52. The Philippe Debt arose out of a transaction in which the money, property, insurance or services which were the subject of the transaction were primarily for personal, family or household purposes, namely fees emanating from medical services rendered to Emmanuella Philippe at certain state hospitals.

53. Emmanuella Philippe's medical debt to the State of New Jersey is a "debt" as defined by 15 U.S.C. §1692a(5).

54. Sometime after the incurrence of the Philippe Debt, but before the initiation of this action, Emmanuella Philippe was alleged to have fallen behind on payments owed on the Philippe Debt.

55. On or before August 8, 2016, the Philippe Debt was referred by Emmanuella Philippe's creditor to FAMS for the purpose of collections.

56. FAMS contends that the Philippe Debt is past-due and in default.

57. At the time the Philippe Debt was referred to FAMS, the Philippe Debt was past-due.

58. At the time the Philippe Debt was referred to FAMS, the Philippe Debt was in default.

59. At all times relevant hereto, Defendant acted in an attempt to collect the Philippe Debt.

60. On or about August 8, 2016, FAMS mailed or caused to be mailed a letter to Emmanuella Philippe. (Annexed and attached hereto as Exhibit C is a true copy of the letter dated August 8, 2016 sent by FAMS to Emmanuella Philippe, except the undersigned counsel has in accordance with Fed. R. Civ. P. 5.2 redacted the financial account numbers and Emmanuella Philippe's street address to protect her privacy).

61. FAMS mailed the August 8, 2016 letter attached as Exhibit C as a part of their efforts to collect the Philippe Debt.

62. Emmanuella Philippe received the letter attached as Exhibit C in the mail.

63. Emmanuella Philippe read the letter attached as Exhibit C upon receipt of the letter in the mail.

64. Exhibit C was sent in connection with the collection of the Philippe Debt.

65. Exhibit C seeks to collect the Philippe Debt.

66. Exhibit C conveyed information regarding the Philippe Debt including the Balance Owed, FAMS reference number, and a demand for payment.

67. The letter attached as Exhibit C is a "communication" as that term is defined by 15 U.S.C. §1692a(2).

68. The letter attached as Exhibit C is the first written communication Emmanuella Philippe received from Defendant.

69. The letter attached as Exhibit C is the first written communication Defendant sent to Emmanuella Philippe regarding the Philippe Debt.

70. Exhibit C represents FAMS's initial collection "communication" with Emmanuella Philippe as "communication" is defined by 15 U.S.C. §1692a(2).

71. Besides the letter attached as Exhibit C, Emmanuella Philippe did not receive any other document from FAMS purporting to contain the initial disclosures required by 15 U.S.C. §1692g.

72. The letter attached as Exhibit C states in relevant part:

    BALANCE OWED $3,916.00

73. The letter attached as Exhibit C states in relevant part:

    If you do not dispute the balance, please send your check or money order to FAMS with the payment coupon below.

74. The letter attached as Exhibit C contained a detachable payment coupon for Emmanuella Philippe to return with payment towards the Philippe Debt that listed a "Balance Owed" of $3,916.00.

75. The letter attached as Exhibit C also states in relevant part on the top of the letter and in the detachable payment coupon:

    "Pay Online by Visiting www.famspayonline.net"

76. Exhibit C listed a "Balance Owed" of $3,916.00 on the top portion of the letter and in the payment coupon, but did not disclose that the Balance Owed might increase due to interest and/or fees.

77. On May 17, 2017, Emmanuella Philippe visited the website www.famspayonline.net that was referred to in Exhibit C to make a payment.

78. When Emmanuella Philippe imputed her FAMS ID number and zip code in the online payment portion of the website, her account appeared and stated the "Current Balance" of

9

the Philippe Debt to be $4,571.00. (Annexed hereto and attached as Exhibit D is the May 17, 2017 printout showing the "Balance Owed" on the Philippe Debt to be $4,571.00).

79. Upon information and belief, the $655.00 increase in the amount of the Philippe Debt from the August 8, 2016 letter attached as Exhibit C ($3,916.00) to the May 17, 2017 notice attached as Exhibit D ($4,571.00) was because of interest and/or fees that had accumulated and/or been added onto the Philippe Debt.

80. Emmanuella Philippe, as would any least sophisticated consumer, incorrectly believed from reading Exhibit C that the "Balance Owed" was static and that her payment of the $3,916.00 amount listed Exhibit C and the detachable payment coupon contain therein would satisfy the Philippe Debt irrespective of when the payment was remitted.

81. On May 17, 2017, had Emmanuella Philippe followed the instructions on Exhibit C and sent a payment of $3,916.00 in the form of a "check or money order to FAMS with the payment coupon below", that would not have satisfied the Philippe Debt in full because the Philippe Debt was accruing interest and/or fees that were not disclosed to Emmanuella Philippe in Exhibit C.

82. On May 17, 2017, had Emmanuella Philippe followed the instructions on Exhibit C and sent a payment of $3,916.00 in the form of a "check or money order to FAMS with the payment coupon below", she still would have owed an additional $655.00 that had accumulated on the Philippe Debt between August 8, 2016 and May 17, 2017. (*See* Exhibit D)

83. Exhibit C is a standardized form letter.

84. FAMS's debt collection practice is largely automated and utilizes standardized form letters.

85. On information and belief, the August 8, 2016 letter attached as <u>Exhibit C</u> is a mass-produced, computer generated form letter that is prepared by FAMS and mailed to consumers in the State of New Jersey, such as Emmanuella Philippe, from whom they are attempting to collect a debt.

86. Defendant used the same procedures it used in sending the letter attached as <u>Exhibit C</u> when sending the same and/or similar letters to other New Jersey consumers.

## CLAIMS FOR RELIEF

### COUNT I

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

87. Plaintiffs incorporates by reference all the above paragraphs as though fully stated herein.

88. In sending the letters attached as <u>Exhibit A</u> and <u>Exhibit C</u>, FAMS violated 15 U.S.C. §§1692, 1692e(2)(A), 1692(e)(10), and 1692g(a)(1).

89. 15 U.S.C. §1692e provides:

**§1692e.        False or Misleading Representations**

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

   (2) The false representation of --

      (A) the character, amount, or legal status of any debt;

   (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer;

90. 15 USC §1692g provides:

**§1692g        Validation of debts**

(a) Within five days after the initial communication with a consumer in connection with

the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing --

    (1) the amount of the debt

91. FAMS violated §1692g(a)(1) by asserting flatly in <u>Exhibits A & C,</u> which were the notices required by §1692g, that the Balance Owed on both the Adebo Debt and Philippe Debt was a sum certain and failing to inform either of the Plaintiffs in its initial communication with them that the Balance Owed on their respective debts would increase due to interest and/or fees.

92. A least sophisticated consumer could read <u>Exhibit A</u> and <u>Exhibit C</u> and be misled into believing that they could pay their debt in full by paying the "Balance Owed" listed on the detachable payment coupon. In fact, however, if interest and/or fees are accumulating on the debt, a consumer who pays the "Balanced Owed" stated on the notice and payment coupon will not know whether the debt has been paid in full. FAMS could still seek the interest and/or fees that accumulated after the initial notice was sent but before the balance was paid. In Jonbu Tunji Adebo's case, FAMS did in fact seek interest and/or fees that had accumulated as evidenced by <u>Exhibit B,</u> which that shows a "Current Balance" of $12,160.00, which is $697.00 higher than the "Balance Owed" listed in <u>Exhibit A</u>. In Emmanuella Philipps' case, FAMS did in fact seek interest and/or fees that had accumulated as evidenced by <u>Exhibit D,</u> which that shows a "Current Balance" of $4,571.00, which is $655.00 higher than the "Balance Owed" listed in <u>Exhibit C</u>.

93. Had Plaintiffs, or any least sophisticated consumer, followed the instructions on <u>Exhibit A</u> and/or <u>Exhibit C</u>, and sent a payment of the "Balance Owed" in the form of a "check or

12

money order to FAMS with the payment coupon below", they would not have paid off their debt in full.

94. Nondisclosure of the amount of the debt, where the debt will increase over the course of the collection, is a well recognized violation. *See, e.g.*, Miller v. McCalla, Raymer, Patrick, Cobb, Nichols & Clark, LLC, 214 F.3d 872 (7th Cir. 2000).

95. Courts in this district and others have recognized that an initial communication validation notice, like the one attached as Exhibit A and Exhibit C violates the FDCPA unless it states the total amount due as of the date the letter is sent and discloses whether the amount of the debt will increase because of interest or fees accruing on the unpaid principal. *See, e.g.* Marucci v. Cawley & Bergmann, LLP, 2014 WL 7140496 (D.N.J. Dec. 15, 2014); Smith v. Lyons, Doughty & Veldhuius, P.C., 2008 WL 2885887 (D.N.J. July 23, 2008); Avila v. Riexinger & Associates, LLC, 817 F. 3d 72 (2d. Cir. 2016).

96. FAMS violated 15 U.S.C. §1692g(a) by failing to disclose in the letter attached as Exhibit A, or within five days thereafter, the correct amount of the Adebo Debt as required by 15 U.S.C. §1692g(a)(1). Exhibit B clearly shows that the amount listed in Exhibit A was either not correct or in the alternative, that FAMS failed to disclose that the amount of the Adebo Debt disclosed in Exhibit A would increase because of interest and/or fees.

97. FAMS violated 15 U.S.C. §1692g(a) by failing to disclose in the letter attached as Exhibit C, or within five days thereafter, the correct amount of the Philippe Debt as required by 15 U.S.C. §1692g(a)(1). Exhibit D clearly shows that the amount listed in Exhibit C was either not correct or in the alternative, that FAMS failed to disclose that

the amount of the Philippe Debt disclosed in <u>Exhibit C</u> would increase because of interest and/or fees.

98. FAMS violated 15 U.S.C. §1692e(2)(A) because the letter attached as <u>Exhibit A</u> made a false representation as to the amount of the Adebo Debt, misrepresented its character (as fixed), and misrepresented its legal status (not disclosing that it was continuing to accrue interest).

99. FAMS violated 15 U.S.C. §1692e(10) by failing to disclose in the letter attached as <u>Exhibit A</u> that the "Balance Owed" on the Adebo Debt may increase because of interest and/or fees and as such used a false and misleading representation in connection with the collection of the Adebo Debt.

100. The false representation of the amount of the Adebo Debt and/or it's character and legal status is material because it impeded Jonbu Tunji Adebo's ability to respond by making him think that payment of the "Balance Owed" amount in the payment coupon in <u>Exhibit A</u> would satisfy the Adebo Debt regardless of when it was paid.

101. FAMS violated 15 U.S.C. §1692e(2)(A) because the letter attached as <u>Exhibit C</u> made a false representation as to the amount of the Philippe Debt, misrepresented its character (as fixed), and misrepresented its legal status (not disclosing that it was continuing to accrue interest).

102. FAMS violated 15 U.S.C. §1692e(10) by failing to disclose in the letter attached as <u>Exhibit C</u> that the "Balance Owed" on the Philippe Debt may increase because of interest and/or fees and as such used a false and misleading representation in connection with the collection of the Philippe Debt.

103.     The false representation of the amount of the Philippe Debt and/or it's character and legal status is material because it impeded Emmanuella Philippe's ability to respond by making her think that payment of the "Balance Owed" amount in the payment coupon in <u>Exhibit C</u> would satisfy the Philippe Debt regardless of when it was paid.

104.     Plaintiffs have alleged a particularized injury because the letters attached as <u>Exhibit A</u> and <u>Exhibit C</u> were mailed and directed to them respectively.

105.     Plaintiffs have alleged a concrete harm because the FDCPA creates a substantive right to be free from abusive debt communications and Defendant's violations of the FDCPA results in concrete harm to Plaintiffs.

106.     Be reason thereof, Defendant is liable to Plaintiffs and the proposed class for judgment that Defendant's conduct violated 15 U.S.C. §1692e and 15 U.S.C. §1692g and for statutory damages, costs, and attorneys' fees pursuant to 15 U.S.C. §1692k.

## CLASS ALLEGATIONS

107.     Plaintiffs incorporates by reference all the above paragraphs as though fully stated herein.

108.     This action is brought as a class action. Plaintiffs brings this action on behalf of themselves and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

109.     The class is initially defined as: (a) all individuals (b) with a New Jersey address (c) who were sent letters or notices from FAMS in a form materially identical or substantially similar to the letters attached as <u>Exhibit A</u> and/or <u>Exhibit C</u> to the Complaint (d) which was not returned as undeliverable (e) on or after a date one year prior to the

filing of this action and on or before a date 20 days after the filing of this action; and (f) which contained at least one of the alleged violations of 15 U.S.C. §1692 *et seq*. herein.

110. The class definition above may be subsequently modified or refined.

111. The proposed class specifically excludes the United States of America, the states of the Third Circuit, counsel for the parties, the presiding United States District Court Judge, the Judges of the United States Court of Appeals for the Third Circuit and the United States Supreme Court.

112. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

  i. **Numerosity**: Plaintiffs are informed and believe and on that basis allege, that the class defined above is so numerous that joinder of all members would be impracticable. Defendant's violations of the FDCPA involve a form collection letter. Upon information and belief, there are at least 40 members of the class. The exact number of class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery. The class is ascertainable in that the names and addresses of all class members can be identified in business records maintained by Defendant.

  ii. **Common Questions Predominate**: There exists a well-defined community of interest in the questions of law and fact involved that affect the parties to be represented. These common questions of law and fact predominate over questions that may affect individual class members. Such issues include, but are not limited to: (a) The existence of Defendant's identical conduct

particular to the matter at issue; (b) Defendant's violations of the FDCPA, specifically 15 U.S.C. §1692e and 15 U.S.C. §1692g; (c) The availability of statutory penalties; and (d) Attorneys' fees and costs.

iii. **Typicality**: Plaintiffs' claims are typical of those of the class they seek to represent. Plaintiffs' claims and those of each class member originate from the same conduct, practice, and procedure, on the part of the Defendant. Thus, if brought and prosecuted individually, the claims of each class member would require proof of the same material and substantive facts. Plaintiffs possess the same interests and have suffered the same injuries as each other and each class member. Plaintiffs assert identical claims and seek identical relief on behalf themselves and the absent class members.

iv. **Adequacy**: Plaintiffs will fairly and adequately protect the interests of each class and neither have any interest adverse to or which directly and irrevocably conflict with the interests of other members of the class. Plaintiffs are both willing and prepared to serve this Court and the proposed class. The interests of Plaintiffs are co-extensive with and not antagonistic to those of the absent class members. Plaintiffs have retained the services of counsel who are experienced in FDCPA litigation and will adequately prosecute this action, and will assert, protect and otherwise represent Plaintiffs and all absent class members. Neither Plaintiffs nor their counsel have any interests which might cause them to not vigorously pursue the instant class action lawsuit.

v. **Superiority**: A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all

       members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender.

113.    Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is appropriate in that the questions of law and fact common to members of the class predominate over any questions affecting any individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

114.    A class action is superior for the fair and efficient adjudication of this matter, in that:

    i.    Individual actions are not economically feasible;

    ii.    Members of the class are likely to be unaware of their rights;

    iii.    Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

**WHEREFORE**, the Court should enter judgment in favor of Plaintiffs and the class and against Defendant for:

1. An order certifying that Count I may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiffs and the undersigned counsel to represent the class as previously set forth and defined above;

2. Adjudging that FAMS violated 15 U.S.C. §§1692e, 1692e(2)(A), 1692e(10), and 1692g(a)(1);

3. An award of statutory damages for Jonbu Tunji Adebo, Emmanuella Philippe, and the class pursuant to 15 U.S.C. §1692k;

4. Attorneys' fees, litigation expenses, and costs of suit pursuant to 15 U.S.C. §1692k; and

5. Such other and further relief as the Court deems proper.

Dated: Floral Park, New York
August 7, 2017

By: /s/ Ryan Gentile
_____
Ryan Gentile, Esq.
Law Offices of Gus Michael Farinella PC
*Attorney for Plaintiffs*
110 Jericho Turnpike – Suite 100
Floral Park, NY 11001
Tel: (201) 6873-7675
Fax: (212) 675-4367
rlg@lawgmf.com

## NOTICE OF ASSIGNMENT

Please be advised that all rights relating to attorneys' fees have been assigned to counsel.

The Law Offices of Gus Michael Farinella, PC

By: /s/ Ryan Gentile
_____
Ryan Gentile